## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

**Civil Action No.**

**KENNITH DAWSON**

      **Plaintiff,**

**v.**

**SOURCE MANAGEMENT, INC. d/b/a SOURCE OFFICE AND TECHNOLOGY, a Colorado corporation,**

      **Defendant.**

_____

## COMPLAINT AND JURY DEMAND

Plaintiff, Kennith Dawson, through his undersigned counsel, for his Complaint and Jury Demand against Defendant, alleges the following:

### INTRODUCTION

1.     From 1996 through May 4, 2016, Plaintiff Kennith Dawson, an African American, was employed by Defendant Source Management, Inc. ("Source"), most recently as an Executive Sales Director. Dawson was very successful in his job. Dawson was the only African American employed by Source in any non-warehouse position. In mid-January 2016, white managers at Source falsely accused Dawson of having "mental health issues" and unidentified performance issues.  On May 4, 2016, Source terminated Dawson's employment on the basis of his perceived mental health issues and his race.

### PARTIES, JURISDICTION, AND VENUE

2.     Plaintiff Kennith Dawson is an individual residing in Lakewood, Colorado.

3.　　　　Defendant Source Management, Inc. is a Colorado corporation with its principal place of business in Golden, Colorado.

4.　　　　Jurisdiction is proper in this Court pursuant to 42 U.S.C. §§ 1983 and 1988, and 28 U.S.C. §§ 1331 and 1343.

5.　　　　Plaintiff Dawson has complied with all administrative, jurisdictional, and legal prerequisites to the filing of this action. Specifically, he has received a Notice of Right to Sue from the Colorado Civil Rights Division.

6.　　　　Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) because the unlawful acts alleged herein were committed within the District of Colorado.

## GENERAL ALLEGATIONS

7.　　　　For fourteen years (from 1996 through 2010), Plaintiff worked for Source as a salesperson and a Sales Manager and was highly successful.  Plaintiff's sales record was among the best at Source.

8.　　　　In early 2011, Source hired a new management team.  These managers began treating Plaintiff differently than his white counterparts, in that his work was unfairly scrutinized and criticized; he was required to check in with his supervisors constantly; despite his decades of successful sales experience at Source, he was micromanaged; he was disregarded or ignored in sales meetings; and he did not receive an equal number of sales leads.

9.　　　　Despite this unequal treatment, Plaintiff continued to perform as well as white salespeople.

10.　　　　In December 2014, Plaintiff's wife passed away.  Plaintiff continued to work and took minimal time off in 2015 to deal with his grief.

11.      In mid-January 2016, Plaintiff asked Source's President, John Givens, for a temporary reduction in his job duties for a period of 90 days so that he could have time to attend to legal matters concerning his wife's estate.  Plaintiff asked to be relieved from attending sales meetings and from the responsibility of developing new clients during the 90-day period, but proposed that he continue to perform all other job duties. Mr. Givens orally agreed to this proposal, and the 90-day period began immediately.

12.      Even though Givens had agreed to Plaintiff's proposal, Source management used the temporary reduction in job duties as an opportunity to force Plaintiff out of the company.  On January 20, 2016, Plaintiff's manager asked to meet with him to review his sales goals for 2016.  In response, Plaintiff suggested that the manager first speak to Givens about the agreement as to the temporary modification of Plaintiff's duties.

13.      Later that day, Givens threatened to put Plaintiff on a "performance improvement plan" and stated that Source management was "extremely concerned about [his] mental health and would like to "start the process for Family Leave & Medical Act provisions." The email stated, "Our concern for your metal (sic) & physical wellbeing is why we are trying to handle this directly with you, instead of the required HR procedures that involve a more ridged (sic) and formal process."

14.      A few days later, Plaintiff met with Givens and the managers.  They were unable to explain their concerns about his mental health or what "performance issues" Plaintiff had that would require a performance improvement plan.  Plaintiff denied that he had performance or mental health issues and declined to take a medical leave.

15.      In early March 2016, after Plaintiff had been working under the modified

work duty agreement with Givens for approximately six weeks, Source's Human Resources Director demanded that Plaintiff sign a "Modified Work Plan" document agreeing to redistribute his remaining work duties to others, give up commissions on existing customer accounts, reduce his benefits, and meet higher performance standards than any other sales manager upon his return to full duties.

16.    The document did not reflect the agreement he had made with Givens in January, and its obvious purpose was to set Plaintiff up for termination. Plaintiff refused to sign the document.

17.    On April 28, 2016, when the 90-day period ended, Plaintiff resumed his regular work duties, as agreed. Nevertheless, on May 4, 2016, Plaintiff was terminated by Givens, who claimed Plaintiff was being "laid off."

18.    At the time of his termination, Plaintiff was the only African-American employee out of approximately 65 employees at the Golden office.  He was the only African-American employee who was employed in any non-warehouse position in the entire company of over 100 employees.

## **CLAIMS FOR RELIEF**

### FIRST CLAIM FOR RELIEF

### (42 U.S.C. §1981)

19.    Plaintiff incorporates the previous allegations into this claim.

20.    Plaintiff was treated differently in the terms and conditions of his employment and was terminated from his employment on the basis of his race, in violation of 42 U.S.C. §1981.

21.    As a result of Defendant's illegal conduct, Plaintiff has suffered

economic damages consisting of lost past and future wages and benefits and compensatory damages for emotional distress and humiliation.

22.     Defendant's conduct was willful and wanton.

## SECOND CLAIM FOR RELIEF

### (Title VII)

23.     Plaintiff incorporates the previous allegations into this claim.

24.     Plaintiff was treated differently in the terms and conditions of his employment and was terminated from his employment on the basis of his race, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et. seq.

25.     As a result of Defendant's illegal conduct, Plaintiff has suffered economic damages consisting of lost past and future wages and benefits and compensatory damages for emotional distress and humiliation.

26.     Defendant's conduct was willful and wanton.

## THIRD CLAIM FOR RELIEF

### (Americans with Disabilities Act)

27.     Plaintiff incorporates the previous allegations into this claim.

28.     Plaintiff was terminated from his employment on the basis of a perceived mental disability, in violation of the Americans with Disabilities Act, 42 U.S.C. §12101, et. seq.

29.     As a result of Defendant's illegal conduct, Plaintiff has suffered economic damages consisting of lost past and future wages and benefits and compensatory damages for emotional distress and humiliation.

30.     Defendant's conduct was willful and wanton.

FOURTH CLAIM FOR RELIEF

(Breach of Contract or Implied Contract)

31.     Plaintiff incorporates the previous allegations into this claim.

32.     Defendant's President, John Givens, approved Plaintiff's request for a modification of his work duties for 90 days thereby entering into a contract or implied contract with Plaintiff.

33.     Defendant breached the contract or implied contract by terminating Plaintiff even though he performed in accordance with the contract or implied contract.

34.     As a result of Defendants' breach of the contract or implied contract, Plaintiff has suffered economic damages consisting of lost past and future wages and benefits.

FIFTH CLAIM FOR RELIEF

(Promissory Estoppel)

35.     Plaintiff incorporates the previous allegations into this claim.

36.     Defendant's President, John Givens, approved Plaintiff's request for a modification of his work duties.

37.     Defendant should reasonably have expected Plaintiff to consider Givens' communication to Plaintiff as a promise that Plaintiff would not be terminated for performing in accordance with the terms of the temporary modification of work duties.

38.     Plaintiff reasonably relied on the promise to his detriment, in that he performed modified work duties for the agreed-upon period and was terminated for doing so.

39.     Injustice can be avoided only by enforcing the promise and

compensating Plaintiff for his lost past and future wages and benefits.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant and award the following:

a) Damages in such an amount as shall be proven at trial for back pay and benefits, wages, and other employment opportunities;

b) Front pay and benefits, in lieu of reinstatement;

c) Compensatory damages, including damages for emotional distress and humiliation;

d) Punitive or exemplary damages;

e) Attorney fees and costs;

f) Pre- and post-judgment interest, costs, expert witness fees; and

g) Such other relief as the Court deems just and proper.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 4th day of October, 2017.

*/s/ Theresa L. Corrada*
BENEZRA & CULVER, P.C.

Plaintiff's Address:

6760 W. 19th Pl., Apt. 204

Lakewood, CO 80214